## R. A. SANTEE v. TRAVELERS INSURANCE COMPANY.[1]

October 15, 1937.

No. 31,377.

*Strong, Covell & Strong,* for relator (respondent below).
*A. R. English,* for respondent (petitioner below).

STONE, JUSTICE.

*Certiorari* on relation of the mortgagee to review an order granting relief under the mortgage moratorium act, L. 1933, c. 339, reënacted L. 1935, c. 47 (3 Mason Minn. St. 1936 Supp. §§ 9633-1 to 9633-21) ; L. 1937, c. 21.

The involved farm consists of 580 acres in Murray county. According to respondent, the improvements, in addition to fencing, consist of "a set of buildings  *  *  * ample for a farm of that size."

The farm was formerly the property of one Rutledge Harris, who mortgaged it to relator to secure a debt of $18,000. March 8, 1935, it was sold under foreclosure of the mortgage. Relator, as mortgagee, bid it in for the amount then due, $20,714.31.

[1]Reported in 275 N. W. 366.

Mr. Harris, the mortgagor, having departed this life in the meantime, his administratrix sold the equity in the farm to respondent January 10, 1936, for $1,100. That was its value as then determined by appraisal in the probate court as condition precedent to the license to the administratrix to sell. Respondent made that purchase upon condition that the administratrix proceed under the moratorium law to get an extension of the time for redemption. That she did, and got an extension from March 8, 1936, to March 1, 1937.

This second proceeding was instituted by respondent as owner and successor in interest of the mortgagor. It resulted in an order, now under review, again extending the time for redemption to March 1, 1938. The only protection it gives the mortgagee is a provision that "petitioner meanwhile commit no waste upon said premises, and cause the same to be farmed and cropped * * * in a good and farmerlike manner"; assign the lease to the relator and account to the latter for the landlord's share of "all crops, income and cash rent." There is provision also that if the premises be leased by petitioner, it shall be upon stated terms: "two-fifths of all crops raised upon said premises, and four dollars ($4.00) per acre for all hay and pasture land."

It is condition precedent to relief under the moratorium act that it must be "equitable and just." L. 1933, c. 339, §§ 2 and 4. Hence equitable principles control, and any petitioner must come into court with hands that are clean and a willingness himself to do equity by the mortgagee as far as it is reasonably within his power to do so.

Respondent is owner of the farm and so entitled to seek relief under the moratorium law. It is not determinative against him that instead of being himself a "dirt farmer" he seems to be a speculator in real estate, particularly farm lands. But it is conclusive against him that his case is utterly lacking in equity in two respects.

First, since he bought the equity he has neither paid nor offered to pay anything on account of current taxes, although well able to pay the whole tax bill. Summarily he refused to pay an item of

$46 charged against the farm by the county because of the failure of both tenant and owner to cut noxious weeds as required by law and the local authorities. He claims that he spent some money in repairing the buildings. Although he keeps a set of books, he was unable to state, or at least he failed to indicate, how much he had spent in repairs. He admits that the numerous buildings as a whole are now in need of repair. In short, respondent's case, as made by his own testimony, is open to no other conclusion than that his one purpose has been and is to speculate at the expense and risk of relator, the mortgagee. By reason of that attitude, characterized by his failure to pay anything on account of taxes and the small item for destruction of noxious weeds, he is reaching for the equitable relief he wants with badly smudged palms.

Next, respondent is a man of means. He owns 750 acres of other land which does not appear to be mortgaged. In ready cash, he has $4,000 to $5,000, and in bonds and securities an amount which he did not disclose. In mortgages, he has a sum which "he cannot tell," but he admitted one item of $20,000. He is interested with a bank in another item, a mortgage, his share of which he values at $10,000. He admits also a line of credit at a solvent bank which he does not use.

Apparent, then, and undeniable, is the possession by respondent of the means, readily available, to enable him to refinance the property. His evidence falls far short of showing inability to refinance it with others than relator. But beyond all that, clinching the proposition, and demonstrating that he refuses to do any equity at all by the mortgagee, is the fact that the latter is willing, and for a long time has been, to sell the farm to respondent and his wife, or to the former alone, for exactly the amount of its claim, upon terms as to deferred payments which are so entirely reasonable that even respondent has made no objection thereto. After negotiations to that end, relator submitted to petitioner a proposed contract for the sale of the farm to himself and his wife.

One of its terms was that "when the amount owing upon this contract shall be reduced to $18,000," there being at the time no default in taxes or otherwise under the contract, the vendee would

be entitled to a conveyance of the farm upon executing and delivering to relator as mortgagee thereunder a purchase money mortgage for the remaining purchase price upon terms which, again, were beyond reasonable objection. Respondent did find fault with the contract but made no counter offer. His initial objection, as restated at the hearing below, was that he did not want his wife obligated personally for the purchase price. That condition relator was willing to meet. Thereupon respondent's position became, and remains, as far as the record discloses, very much that of one who stands mute when it is his duty to speak. Yet he admits having much more cash than the sum that would have been required, under the contract proposed by relator, to get him a deed of the farm, subject to a new and wholly reasonable purchase money mortgage for the unpaid portion of the purchase price.

We are not overlooking a finding of value high enough to give respondent a substantial equity. Such a finding, however well supported by evidence, does not help a petitioner who has intruded into the situation as a speculator for his own profit with the status and in the attitude of respondent. He wagered his original stake of $1,100 that the future would bring him a profit. The trouble is that as the game progressed he insisted that relator carry the whole burden of his betting, although in the end he wants the whole "pot." The larger his equity, therefore, the more inequitable becomes the position of respondent, who admittedly has the means wherewith to carry on.

Respondent admitted on cross-examination that the real reason for his refusing to purchase from relator, on the terms offered, was his disinclination to assume personal liability under the proposed contract and the purchase money note and mortgage thereby provided for. That circumstance floodlights the whole case and makes impossible any view other than that respondent's purpose is to speculate at the expense and risk of relator.

The moratorium law is intended as a defensive shield to protect owners from exploitation by mortgagees or their assigns. It must not be converted into a weapon of offense to enable a speculating

purchaser of an equity of redemption to exploit.a mortgagee. That is just what respondent is attempting.

Because it clearly appears that petitioner did not come into court with clean hands and was, and remains, unwilling to do equity although abundantly able to do so, it was error to grant him any relief. In consequence, the order must be reversed with directions to deny respondent's petition.

So ordered.